## Richmond

WILLIAM ALEX GRANT, AN INFANT, ETC. v. CARRINGTON EDWARD
MAYS, AN INFANT, ETC.

January 14, 1963.

Record No. 5531.

Present, Spratley, Buchanan, Whittle, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*E. Marshall Frost* (*Caskie, Frost, Davidson & Watts*, on brief), for
the plaintiff in error.

*Robert C. Goad*, for the defendant in error.

I'ANSON, J., delivered the opinion of the court.

Carrington Edward Mays, an infant, 14 years of age, brought this
action by his mother and next friend to recover damages for personal
injuries sustained when he was struck while riding his bicycle by an
automobile operated by the defendant, William Alex Grant, an infant,
19 years of age. A jury trial resulted in a verdict for the plaintiff
in the sum of $8,000 on which the trial court entered final judgment
and the defendant is here on a writ of error.

The accident occurred on October 16, 1960, about 10 A.M., on State route 610, in the village of New Glasgow in Amherst county. The road was 15 feet wide, its surface was black top, and the speed limit was 55 miles per hour. The plaintiff lived about 300 feet from the east side of the highway at the end of a private driveway. Opposite the entrance of the driveway, and on the west side of the road, there were several mailboxes. The road extended generally in a north-south direction and was reasonably straight for one-tenth of a mile north of the plaintiff's driveway. At the north end of this straight stretch there was a sharp curve.

The evidence is in hopeless conflict as to how the accident occurred.

The plaintiff testified that he rode his bicycle out of his driveway, turned north on route 610 to go to a neighbor's house, and had traveled about 250 feet when he noticed that the neighbor's automobile was not in his yard. He then turned around and proceeded south on the west side of the road. When he had gotten almost back to the mailboxes opposite his driveway he heard a car coming around the sharp curve behind him, making a lot of noise. He looked back, saw the car approaching fast, and pulled his bicycle to the right. He got the front wheel of the bicycle off the road and the rear wheel to the edge of the hard surface when it was hit from the rear by the defendant's automobile, and he was thrown to the ground and injured.

The testimony of the mother and brother of the plaintiff was substantially the same as his, except the brother stated that the defendant's automobile sounded as if it was going 60 to 70 miles an hour.

The defendant testified that while he was traveling south on the road at about 35 to 40 miles per hour, the plaintiff rode his bicycle out of the driveway directly in front of his automobile when he was about a car's length away from him, and he pulled to the left side of the road and applied his brakes in an effort to avoid striking him. After applying his brakes his car slid sideways and hit the rear wheel of the bicycle. The car continued to slide on the road for a short distance and then it went down a ditch and into the bank of the yard on his left side of the highway.

The testimony of two disinterested neighbors was substantially the same as that related by the defendant.

The testimony of the investigating officer reveals that the defendant's automobile had plowed into the bank of a yard on the east side of the road, south of plaintiff's driveway, and its entire front end was badly damaged. There were no marks on the automobile showing

the impact with the bicycle. The bicycle was found about eight feet to the north and eight feet west of the mailboxes, and only its rear wheel frame was damaged. The automobile made skid marks which started 44 feet north of where the plaintiff's bicycle was found and from there extended 76 feet to where it came to rest, for a total distance of 120 feet. These marks extended down the middle of the 15-foot pavement almost to the driveway and then veered to the left toward the bank on the east side of the road.

There was evidence that the plaintiff was not a normal, healthy child. His mother testified that he finished the third grade of school when he was 10 years of age and that he made good grades, but he had refused to stay in school after the third grade. Dr. G. B. Arnold, Superintendent of Lynchburg State Colony, an institution for feeble-minded persons, examined the plaintiff at the request of the defendant on March 21, 1961, and testified that this examination revealed that the plaintiff was 5 feet 1 inch tall and weighed 91 pounds. He was very pale, under-weight, and had bad teeth, enlarged tonsils, defective vision, and possible diabetes. Dr. Arnold thought the plaintiff was mentally defective and said he would classify him in the upper moron group.

The sole question we need to consider on this appeal is whether the court erred in granting plaintiff's instruction No. 7, which reads as follows:

"The Court instructs the jury that the law does not require that a child shall exercise the same degree of care and caution as a person of mature years, but only such care and caution as a person of his age, discretion and intelligence would naturally and ordinarily use; and if the infant plaintiff exercised such care and caution as might have been reasonably expected from a child of his age, discretion and intelligence under the circumstances of this case, and he was injured in consequence of the negligence of the defendant, *then the defendant is liable, although the infant plaintiff may have contributed to the injury*." (Italics supplied.)

The defendant concedes that there was evidence from which the jury could conclude that he was guilty of negligence, but says that when a child is over 14 years of age the principle of contributory negligence applies the same as it does in the case of an adult; that the standard of care the plaintiff was required to exercise for his safety was that of reasonable care; and that the issue of plaintiff's contributory negligence was improperly removed from the jury by the instruction.

In Virginia, a child under 7 years of age is conclusively presumed to be incapable of contributory negligence. *Morris* v. *Peyton*, 148 Va. 812, 821, 139 S. E. 500, 502, 503; *Sheckler* v. *Anderson*, 182 Va. 701, 707, 29 S. E. 2d 867, 869; *Birtcherd Dairy* v. *Edwards, Adm'r*, 197 Va. 830, 834, 91 S. E. 2d 421, 424; 13 Mich. Jur., Negligence, § 42, p. 560. Children between the ages of 7 and 14 are presumed to be incapable of exercising care and caution for their own safety, and this presumption prevails unless rebutted by sufficient proof to the contrary. *Morris* v. *Peyton, supra; P. L. Farmer, Inc.* v. *Cimino*, 185 Va. 965, 970, 41 S. E. 2d 1, 3; *Carpenter* v. *Atlantic Coast Line R. Co.*, 195 Va. 530, 532, 79 S. E. 2d 603, 604; *Read* v. *Daniel*, 197 Va. 853, 857, 91 S. E. 2d 400, 403; 13 Mich. Jur., Negligence, § 42, p. 561.

After a child reaches the age of 14 he loses the benefit of all presumptions in his favor. He is presumed to have sufficient capacity to be sensible of danger and to have the power to avoid it, and this presumption will stand until overcome by clear proof of the absence of such discretion as is usual with infants of that age. *Reid* v. *Medley*, 118 Va. 462, 468, 469, 87 S. E. 616, 618. See also *Chesapeake & O. R. Co.* v. *Saunders*, 116 Va. 826, 83 S. E. 374; *Gough* v. *Shaner, Adm'r*, 197 Va. 572, 90 S. E. 2d 171; 38 Am. Jur., Negligence, § 205, p. 891; 2 Harper & James, The Law of Torts (1956), p. 924.

In *Reid* v. *Medley, supra*, a 17-year-old infant was killed in the course of his employment. It was held that the trial court erred in not granting an instruction which would have told the jury that an infant over 14 years of age is presumed to have the capacity to understand and appreciate danger and that he had the burden of showing incapacity by a preponderance of the evidence, sufficient to satisfy the minds of the jury.

In *Chesapeake & O. R. Co.* v. *Saunders, supra*, 116 Va. at p. 830, 83 S. E. at p. 376, a case involving an active, 18-year-old plaintiff, this Court held that an instruction telling the jury that they must find for the plaintiff "even though the said plaintiff was guilty of contributory negligence," could not be sustained under the doctrine in this jurisdiction.

In *Gough* v. *Shaner, Adm'r, supra*, 197 Va. at p. 576, 90 S. E. 2d at p. 174, the plaintiff was 13 years old, and there was dictum that if the plaintiff had been over the age of 14 his violation of the ordinance would have unquestionably constituted negligence *per se*, citing authority applicable to violations of statutes by adults.

Although a child over the age of 14 is presumed to have adult capacity as to contributory negligence, it does not necessarily mean that his conduct is measured by adult standards. *Reid* v. *Medley, supra,* 118 Va. at p. 468, 87 S. E. at p. 618. By the weight of authority, the standard by which his conduct is to be measured is that degree of care which children of the same age, experience, discretion and knowledge would exercise under the same or similar circumstances. 38 Am. Jur., Negligence, §§ 204 and 205, pp. 885-892; 65 C. J. S., Negligence, § 146, p. 788-792. See cases collected in Annotations 77 A. L. R. 2d 917, 927-932; 174 A. L. R. 1080, 1145-1154; 107 A. L. R. 4, 140-147.

The plaintiff in the present case became 14 years old on April 6, 1960, and the accident did not occur until October 16, 1960. Under the rules applicable to this case we hold that the plaintiff was presumed to be capable of and chargeable with contributory negligence. But the standard of care required of him was that degree of care expected of a child of like age, intelligence and experience under the same or similar circumstances. Whether the plaintiff exercised that degree of care required of him was a factual question for the jury to determine. See 38 Am. Jur., Negligence, § 357, pp. 1064, 1065; 77 A. L. R. 2d 917, 932 *et seq.*

Instruction No. 7 told the jury that the plaintiff could recover "although the infant plaintiff may have contributed to the injury." This language erroneously took away from the jury the question of the contributory negligence of the plaintiff and in effect told them that he was not capable of being contributorily negligent as a matter of law, which is the rule applicable to a child under 7 years of age. The instruction was also in conflict with other instructions, which were granted without objection, submitting the issues of negligence and contributory negligence to the jury, and confused the issues of *capacity* and *standard of care.*

For the reasons stated, we hold that the giving of plaintiff's instruction No. 7 was reversible error. Accordingly, the judgment is reversed and the case is remanded for a new trial.

*Reversed and remanded.*