# Richmond

## Rosser Williams, An Infant, etc. v. Blue Bird Cab Company, Inc.

April 25, 1949.

Record No. 3466.

Present, All the Justices.

The opinion states the case.

*Easley & Hoge*, for the plaintiff in error.

*Perrow & Rosenberger, Wm. B. Kizer* and *Wm. Lyne Wilson*, for the defendant in error.

MILLER, J., delivered the opinion of the court.

Rosser Williams, an infant who sues by next friend, plaintiff in error, sought damages from the Blue Bird Cab Company, Inc., defendant in error, for injuries sustained when struck by a cab. From a verdict and judgment in favor of defendant, this writ of error was awarded.

The accident happened at about five o'clock p. m., August 4, 1947, on Johnson Street in the city of Lynchburg. That street is only a block long and extends from east to west. At its western extremity, it is intersected by D Street and at its eastern end is C Street. The hard surface is thirteen feet wide and bordered by dirt shoulders about three or four feet in width.

The cab entered from D Street and stopped for a passenger "in the middle" of the hard surface in front of No. 320 Johnson Street, which house is on the north side and to the left with reference to the direction in which the cab was proceeding. The point where the passenger boarded the cab was not far from D Street and just before reaching the crest of a slight hill. After the passenger was seated, the

cab ascended the grade for a short distance. Upon arrival at the brow of the hill, there was unobstructed view down the block to C Street. From the crest of the hill, several children were seen by the driver playing on the hard surface and the dirt shoulder opposite and across from 310 Johnson Street, which dwelling is likewise on the left or north side. It is not made clear just how many were in the group, but there appear to have been some seven or eight. When first observed by the driver, they were about eighty-seven feet away.

As the cab approached along the right side of the hard surface two or three feet from the shoulder and at a speed of about ten miles per hour, an older boy who was standing nearby on the south side of Johnson Street called to the younger children, "You all look out, here comes a cab." At that time or shortly before the warning was called and as the cab approached, the children who were on the hard surface walked or ran toward the entrance of 310 Johnson Street. The plaintiff, who was only two years old and smaller than the other children, was on the right or south shoulder of the street about three or four feet from the hard surface and made no immediate attempt to cross the street with those who then went to the left shoulder. The driver says that he saw the group and with his foot on the brake and the cab in low gear, "was just easing down to them" as he approached C Street. His account of the immediate happening is:

"I proceeded on down the street. I still had it in low gear, didn't even have my foot on the gas, had it setting on the brake, and when I started by the kid then the colored fellow on my right in front he hollered and when he hollered I shut down on the brakes and something hit the fender or something, sounded like it hit the fender just as I hit the brakes."

It is not definitely established but it rather appears from the evidence that when several of the children went to the left shoulder two or more larger boys remained with or near the plaintiff on the right shoulder of the street.

When the older boy called to warn the children of the approaching cab, it was about twenty-two to twenty-five feet from the plaintiff, who was then three or four feet from and to the right of the hard surface. Plaintiff in error contends that it was about that time when he started to run toward the hard surface and the driver had ample opportunity to see him and avoid the accident. There is, however, testimony that the cab was almost opposite the child when he suddenly ran into the street and was struck.

Though the defendant's driver saw the group of children in and near the street as he approached and observed those who were actually upon the hard surface go to the north side, he never saw the plaintiff until after striking him. His explanation of his failure to see the plaintiff as he neared the group is that the child must have been behind "some of the bigger kids that was standing up." He also says when his cab was almost opposite the child that due to the height of the plaintiff, which was only twenty-eight inches, he could not be seen from the driver's seat across the hood of the cab. However, as the child ran onto the hard surface and directly in front of the right wheel, he was seen by the passenger seated on the right side of the cab, who called a warning but not in time to avoid the collision. When warned by the passenger, the driver applied the brakes and the cab skidded to a stop in about six feet, but not until it had run over the plaintiff's foot and inflicted permanent injury.

Upon these facts, several instructions were given at the instance of both plaintiff and defendant.

Plaintiff asserts that Instruction V, which was granted defendant, is erroneous and prejudicial.

Defendant insists that the instruction is a correct statement of law and justified by the facts. It further maintains that if inaccurate in any respect, the jury was fully and clearly informed by Instruction No. 3, given for the plaintiff, as to the duty and care required of the driver under the circumstances confronting him.

The two instructions are as follows:

Instruction V: "The Court instructs the jury that if you believe from the evidence that Rosser Williams suddenly darted away from the group of children into the path of the automobile and that such automobile was being driven in a lawful manner and it was then impossible, by the use of reasonable care, for the driver of the automobile to see Rosser Williams because of his size and to avoid a collision with him, then it is your duty to return a verdict for the defendant, Blue Bird Cab Company."

Instruction No. 3: "The Court instructs the jury that if they believe from the evidence in this case that the operator of the Defendant's taxicab, before the accident, observed children in Johnson Street ahead of him at or near the point of the accident, that, alone, was notice to him of the risk and danger of the situation and he had no right to assume that children of tender age would remain in a place of safety, but, on the contrary was required, in the exercise of ordinary care, to anticipate that the children, or some of them, acting upon some childish impulse, heeedless of danger and incapable of exercising precaution to be expected of adults, might, through their thoughtlessness, expose themselves in some way to danger of injury, and it was his duty in approaching and passing the children to increase his vigilance as he approached the said children and to exercise that degree of care that a person of ordinary prudence would have exercised under similar facts and circumstances to avoid danger of injury to them, and if he failed to do so that would be negligence for which the defendant would be responsible."

■ The object of instructions is to impartially inform the jury in clear, concise and succinct language of the principles and rules of law applicable to the case presented by the evidence and thus aid them in arriving at a correct verdict. They may and often do recite and so present the factual theories relied upon by the respective litigants, but in so doing, they must be supported by evidence or factual presumptions. It is the duty of the jury to consider them

as a whole and in the light of the evidence applicable to the issues presented.

Instruction No. 3 fully, clearly and correctly recited the duty and care imposed by law upon the operator of a vehicle approaching a child or children in or near the street whom he has seen. *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 547; *Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Harris* v. *Wright,* 172 Va. 67, 200 S. E. 597, and *Clark* v. *Hodges,* 185 Va. 431, 39 S. E. (2d) 252. It told the jury that under such circumstances, he was required to take into consideration that they might act thoughtlessly and upon childish impulses, and it also informed them that such circumstances were to be considered in determining whether or not he was negligent. In addition, Instruction No. 1 informed the jury that a child of plaintiff's age was conclusively presumed to be incapable of contributory negligence.

Plaintiff's Instruction No. 2, specifically called attention to No. 3 by telling the jury "That if you believe from the preponderance of all of the evidence and all fair inferences to be drawn therefrom that the operator of defendant's automobile failed to exercise the degree of care and precaution required of him as set forth in Instruction No. 3 and that such failure proximately caused or contributed to plaintiff's injuries then the jury should find for the plaintiff."

Instruction V undertakes to recite the defendant's factual theory of how the accident occurred and tells the jury if they believe such factual recital they shall find for the defendant. Plaintiff in error insists that it is based upon a partial view of the evidence, ignores material facts such as that the driver had seen the group of children, and insufficiently states the duty imposed upon a driver who has observed children in or near the highway.

It contains no positive misstatement of law, a defect that cannot be cured by a correct statement thereof in another instruction. *Gary* v. *Artist,* 186 Va. 616, 43 S. E. (2d) 833. Yet, it is not skillfully drawn and in its factual recital

and in the statement of the duty imposed on the driver, it is not so inclusive, clear, and complete as it ought to have been. By proper phraseology, it should have more fully and precisely stated the duty of the driver with respect to the care to be exercised in his approach when he had seen children in or near the street. As used, the phrase, "drive in a lawful manner", is ambiguous and susceptible of the construction that the driver had performed his duty if he did not exceed the speed limit and was driving lawfully at the moment of the collision.

Nor are the words, "suddenly darted away from the group of children", approved. While certain testimony establishes the fact that the child ran suddenly into the path of the vehicle, the above phrase was not wholly justified in view of the testimony. The language used by the witnesses in describing the child's movement which is to the effect that he suddenly ran into the street and was hit would have been more appropriate. The phrase describing what the child did immediately before being struck, as set forth in the instruction, is more impressive than that used by the witnesses.

Though the instruction complained of is a finding instruction, it is not based upon a partial recital of the evidence, such as is condemned in *Hamilton* v. *Glemming*, 187 Va. 309, 46 S. E. (2d) 438. Factually, it is rather limited in scope and a somewhat ambiguous statement of the care and duty imposed by law upon the driver under the circumstances obtaining.

Standing alone and without other or further explanation of the duty incumbent upon the driver under the circumstances disclosed by the evidence, the instruction might have been misleading and prejudicial. But, when considered along with the other instructions given, especially No. 3, we are convinced that the law applicable was fully and sufficiently presented to the jury by the several instructions as a whole, none of which are in conflict with any other.

A similar situation was dealt with in *Higgins* v. *Whitmore*, 116 Va. 414, at p. 422, 82 S. E. 180:

"The second objection to the instruction undertakes to bring the case within the influence of the recognized general rule that an instruction which purports to cover the entire case and calls for a verdict must 'be predicated upon all the material facts which the evidence proves, or tends to prove.' (Cases cited.)

"But the rule is not violated when an incomplete statement in one instruction is so supplemented by an additional statement in another instruction as to include in both a complete statement of the case. Instructions are to be read and considered as a whole, and an incomplete statement in one instruction may be cured by a supplemental statement in another, if when both are read together the court can see that the jury could not have been misled by the incomplete instruction." (Cases cited.)

Recent recognition of this principle, that one instruction which is technically insufficient but in which no positive misstatement of the law is made may be aided and rendered sufficient by correct, full and explicit explanation and direction to the jury by another instruction, is recognized in the case of *Yorke* v. *Maynard*, 173 Va. 183, 3 S. E. (2d) 366.

Reading Instructions Nos. 3 and V together, they clearly and sufficiently inform the jury of the duty and care required of the driver under the facts appearing in the record. When so considered, we do not deem No. V amenable to the objection asserted nor could the jury have been misled thereby.

The judgment of the trial court is affirmed.

*Affirmed.*